**Doorskin Product Agreement**

This Molded Doorskin Product Agreement (hereinafter referred to as the "Agreement") is made effective the __1__ day of __MAY__, 2012, by and between JELD-WEN, Inc., an Oregon Corporation, headquartered at 3250 Lakeport Blvd., Klamath Falls, Oregon, 97601 (hereinafter referred as "JELD-WEN") and STEVES and SONS, INC., a Texas Corporation, headquartered at 203 Humble Ave., San Antonio, Texas, 78225 (hereinafter referred to as "STEVES"), as the Parties.

This Agreement supersedes all previous Molded Doorskin Product Agreements, including any Amendments or Addendums thereto, between the Parties.

**RECITALS**

WHEREAS, JELD-WEN is in the business of manufacturing molded doorskins products;

WHEREAS, JELD-WEN and STEVES desire to enter into this Agreement relative to the purchase and sale of such products;

NOW THEREFORE, in consideration of the agreements of the Parties herein contained and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties agree as follows:

1. **Purchase and Sale.** JELD-WEN hereby agrees to sell to STEVES, and STEVES hereby agrees to purchase from JELD-WEN, molded doorskin products according to the terms and provisions of this Agreement. The products subject to this Agreement shall be the full range of JELD-WEN molded doorskin products (the "Product").

2. **Term**. This Agreement shall be in effect from January 1, 2012, through December 31, 2019, and shall automatically renew for successive 7-year terms unless terminated by either party in accordance with the Termination provisions of this Agreement.

3. **Termination:**

    a. This Agreement may be terminated as follows:

        1) FOR CAUSE:

            a). if either party becomes bankrupt or insolvent, or defaults in the performance of any obligation contained herein, and said default is not cured within thirty (30) days after receipt of written notice identifying said default, the other party, at its sole discretion and option, may, upon written notice to the defaulting party, terminate this Agreement effective immediately.

2) WITHOUT CAUSE:

a). STEVES may terminate this Agreement for any reason, or no reason at all, upon two (2) year written notice to JELD-WEN, with no liability.

b). JELD-WEN may terminate this Agreement for any reason, or no reason at all, upon seven (7) years written notice to STEVES, with no liability. Notwithstanding anything herein to the contrary, if JELD-WEN gives notification of termination of this Agreement under this clause 3.a.2) b), STEVES may give notice of termination of the Agreement effective immediately.

3) SIGNIFICANT CHANGE IN PRICING FORMULATION: If as a result of any periodic change in pricing formulation under this Agreement JELD-WEN puts in place a 5% or greater pricing increase over the then-existing pricing, STEVES may, upon written notice to JELD-WEN, terminate this Agreement effective immediately.

4) FORCE MAJEURE:

By either party with ninety (90) days' notice if the Parties cannot resolve continuation of this Agreement under *force majeure* as defined herein.

b. Any termination shall be without prejudice to the provision of any Product and the collection of any monies then due and owing.

c. The above and foregoing provisions and remedies shall be cumulative and not exclusive and the Parties shall be entitled to any and all additional remedies provided by law or in equity.

4. **Quantity:** STEVES agrees to purchase from JELD-WEN not less than eighty percent (80%) of its molded doorskin products requirements from such products that are manufactured and offered by JELD-WEN ("purchase commitment"). JELD-WEN agrees that it will deliver to STEVES all molded doorskin products ordered within thirty (30) days of receipt of STEVES' purchase order. Doorskin products not manufactured by JELD-WEN are not considered when calculating the above purchase commitment. In addition, STEVES may purchase outside of the 80% purchase commitment from another source if

STEVES purchase price for the same or similar product from another source is at least 3% less than the then current JELD-WEN delivered purchase price for the product but only after JELD-WEN has had a reasonable opportunity to match such lower purchase price. Although STEVES has the right to so purchase from other sources, it is the intent and spirit of this Agreement that, subject to acceptable terms as set forth above, STEVES will purchase the maximum volume possible under this Agreement from JELD-WEN.

5. **Terms** JELD-WEN shall sell its Product to STEVES at the pricing schedule attached hereto as Schedule 1. STEVES payment terms will be 2% 15th Prox. / Net 16th Prox.

6. **Price**
    a. The price for Product delivered to STEVES' facilities in effect on the date hereof will be as shown in Schedule 1 (the "Initial Price").

    b. The Initial Price shall remain in effect for the duration of this Agreement unless a price increase or decrease takes place in accordance with the terms hereof.

    c. The Initial Price may vary on an annual basis by an amount that is the the percentage increase in the JELD-WEN Key Inputs (shown in Schedule 2). The percentage of cost contributed as initially supplied by JELD-WEN in Schedule 2 is subject to verification by STEVES. JELD-WEN will calculate the variance utilizing production and shipments from JELD-WEN plant locations for the previous rolling twelve (12) month period October 31 to November 1 (for purposes of a November 2012 adjustment, the October 31, 2010 to November 1, 2011 period shall be used). Once this baseline cost is established utilizing the correct percentage and defined input costs, a percent change will be established. The sales price will then be adjusted to 50% of the percent change in cost. By no later than [November 30] of each year, JELD-WEN shall provide notice to STEVES of the price to be in effect for the coming year (January 1 – December 31). In the event such notice is not received by STEVES by the close of business on November 30, STEVES will so notify JELD-WEN and JELD-WEN will have 15 days (through December 15) to cure such omission, failing which there shall be no price increase for the coming year. If such notice specifies a price to be in effect for the coming year that results in a 5% or greater increase over the then-existing price, however, STEVES may, upon written notice to JELD-WEN, terminate this Agreement effective immediately in accordance with clause 3.a.3) of this Agreement.

    d.

  e.  JELD-WEN agrees that, during the term of this Agreement, it will not sell molded doorskin products to anyone in North America with purchase volumes less than STEVES at a net price, inclusive of rebates and discounts, which would be lower than the net price, inclusive of rebates and discounts, offered to STEVES. The foregoing does not apply to the sale of Molded Doorskin Products by JELD-WEN to any JELD-WEN divisions, subsidiaries, affiliates, or other entities in which JELD-WEN owns an interest.

7. **Administration**. JELD-WEN and STEVES agree that STEVES may use all [JELD-WEN trade names] in marketing and using the Product and further agree to use their best efforts to jointly identify ways to reduce costs in the following areas: Transportation, order processing, packaging, scheduling and inventory management. In furtherance hereof, the Parties agree that, by November 30 of each year, they will use their best efforts to schedule four (4) meetings (one each quarter) each year for the Parties to discuss administration and growth of this Agreement.

8. **Quality**. The Product will at all times be of a quality satisfactory to STEVES, meeting JELD-WEN's specifications, fit for the intended purpose, and subject to JELD-WEN's standard written warranty applicable to the Product (the "Specifications"). If JELD-WEN ships Product that do not meet JELD-WEN's Specifications (hereinafter "Defective Product") then JELD-WEN, after notice, inspection and verification of the Defective Product, will be obliged to reimburse STEVES for the price of the Defective Product. STEVES will keep records of all such Defective Product. Any additional costs over the price of the Defective Product shall be negotiated by the Parties on a case by case basis. JELD-WEN will not be liable for any claim by STEVES for Defective Product caused by STEVES' own negligence.

9. **Assignment:** This Agreement and the rights and obligations contained herein, shall be binding upon and inure to the benefit of the successors and assigns of the Parties, provided, however, that the rights and obligations hereunder cannot be assigned, transferred or delegated without the prior written consent of the other party, who shall have complete discretion in consenting to any proposed assignment, transfer or delegation; however, said consent shall not be unreasonably withheld.

10. Applicable Law and Venue. This Agreement and any questions or disputes which may arise hereunder shall be construed and governed by the laws of the State of [Delaware], but any action or proceeding to address or resolve any question or dispute may be filed in any court of competent jurisdiction, provided shall first be submitted to alternative dispute resolution process as follows:

  a) Internal Conference. First, either party shall give notice to the other party of any dispute requiring formal resolution and the dispute will be immediately submitted to senior

        executives of each of the Parties, who shall promptly meet to address and attempt to resolve the dispute. Such senior executives must possess the full authority to fully and finally resolve the dispute. If such executives to not agree upon a resolution within thirty (30) days of submission of the dispute by the Complaining Party, then the Parties shall proceeds to mediation, as follows:

    b)    Mediation. The Complaining Party will, within thirty (30) days after conclusion of the Internal Conference, give notice to the other Party of the election to have the dispute referred to non-binding mediation before a single mediator. The mediator and location for the mediation shall be agreed upon by the Parties but, if agreement cannot be reached within fifteen (15) days of notice of the above election of mediation, then the Complaining Party will refer the mediation to the closest Dispute Resolution Center or American Arbitration Association office, who shall then be solely responsible for selection of the mediator and location of the mediation. All costs of the mediation will be shared equally by the Parties. If the dispute cannot be resolved by this Mediation, and only then, the Complaining Party may then file suit in any court of competent jurisdiction concerning the dispute, in any state except Oregon, Texas or Florida.

**11.** **Force Majeure.** JELD-WEN and STEVES shall be excused for delay in performance or for non-performance of this Agreement due to extreme weather conditions, war, fire, strikes, riots, lockouts, civil commotion, cessation or stoppage of labor, extraordinary breakdown, acts of God, or for any other material cause reasonably unforeseeable and beyond the control of JELD-WEN or STEVES. The Party directly affected by a *force majeure* event will endeavor promptly to overcome it and to keep the other Party informed of its progress but it is not required to settle any labor dispute on terms which it considers to be unfavorable to it.

In the event that JELD-WEN's production of Product is limited or decreases, for any *force majeure* reason, JELD-WEN will follow the Allocation procedures outlined in below.

**12. Attorney Fees.** In the event of any action or proceeding arising out of this Agreement or any provision of this Agreement, including, but not limited to, any breach of this Agreement, the prevailing party in any such action or proceeding shall be entitled to recover its reasonable costs and reasonable attorney's fees, including fees on appeal, if any, in addition to any other relief awarded.

**13. Waiver.** Failure of either party at any time, or from time to time, to pursue or enforce any rights or terms of this Agreement shall not be construed to be a waiver of such right or term or such party's right to thereafter enforce each and every provision of this Agreement. No waiver of any right, term or condition of this Agreement shall be effective unless made in writing signed by the party against whom any such waiver is sought to be enforced.

**14. Severability.** If any term or provision of this Agreement is determined by a court of competent jurisdiction to be invalid, void or unenforceable to any extent in whole or in part, the provision(s) shall be deemed severed herefrom, and the remainder hereof shall continue to be in full force and effect in its entirety.

**15. Representation**. STEVES and JELD-WEN represent and warrant to each other that each has full power and authority to execute, deliver and consummate this Agreement, and that no provision exists in any contract, document or instrument to which JELD-WEN or STEVES is a party or would be bound that would be violated by the provisions of this Agreement.

**16. Notice.** Any notice or notice required hereunder shall be in writing and delivered by expedited personal delivery or facsimile, or by registered or certified mail, return receipt requested, postage prepaid, as follows:

    IF TO STEVES:

    STEVES AND SONS, INC.
    P.O. BOX 1866
    San Antonio, Texas 78297-1866
    Attn.: Edward G. Steves, C.E.O.
    Telephone: 210/924-5111
    Facsimile: 210/924-0470

    IF TO JELD-WEN:

    JELD-WEN, Inc.
    3250 Lakeport Blvd.
    Klamath Falls, OR 97601
    Attn: Philip Orsino, President
    Telephone: 541/882-3451
    Facsimile: 541/885-7454

**17. Equal Opportunity to Participate in Drafting**. The Parties have participated and had an equal opportunity to participate in the drafting of this Agreement and the attachments. No ambiguity shall be construed against any party based upon a claim that said party drafted any language in question.

**18. Entire Agreement**. This Agreement constitutes the entire Agreement between the Parties and may not be modified or amended except in writing signed by each of the Parties or authorized agents of the Parties. There are no understandings, agreements or representations, express or implied, not specified in this Agreement.

**19. Miscellaneous**. All dollar amounts set for the in this Agreement are in U.S. Currency.

**20. Allocation.** By November 30 of each year, STEVES agrees to provide to JELD-WEN a forecast of its planned purchases of Product for the following year, and further agrees to update this forecast on a quarterly basis throughout the year, the purpose of which is to assist JELD-WEN in managing its production levels to meet STEVES' anticipated requirements for Product. By January 30 of each year, JELD-WEN shall provide STEVES with a percentage number regarding its Product, which number is to be calculated by dividing the total number of skins shipped to STEVES the preceding year by the total number of skins manufactured in North America by JELD-WEN the preceding year. If, during the term of this Agreement, JELD-WEN recognizes an actual or anticipated shortage in production capacity over the current or anticipated demand, JELD-WEN shall immediately notify STEVES of JELD-WEN'S current production capacity in North America indicating a shortage in production capacity, which will then result in the need for an allocation period ("notice of allocation"). The allocation period will start effective the first day of the month following the notice of allocation. During the allocation period, STEVES will be allowed to purchase up to the percentage number of JELD-WEN production volume during allocation provided by JELD-WEN in the January 30 notification referenced above, provided that volumes purchased by customers to which JELD-WEN has no commitment to sell under a supply agreement cannot limit JELD-WEN's provision of volume requested by STEVES during allocation. In any year including an allocation period, the quantity purchase commitment in 4 above, shall not apply. An allocation period shall end when JELD-WEN'S capacity exceeds demand and notice of the same is provided by JELD-WEN to STEVES, which notice shall not be withheld or delayed.

## 21. Verification

The Parties agree that compliance with certain provisions of this Agreement may require good faith verification of certain facts, figures or other relevant matters by either or both of the Parties. This will include provisions in sections 4, 6, 8, 11 and 20 of this Agreement. The Parties agree that any such requested verification shall be by affidavit, subject to independent verification by the other Party. If, however, after such efforts further verification is requested by a Party (the "Requesting Party"), the other Party (the "Complying Party") agrees to make available to the Requesting Party at the expense of the Requesting Party, all such information, business records, data, and back-up documentation necessary for the Requesting Party to determine the Complying Party's compliance to secure the requested verification.

## 22. Confidential Information

The Parties recognize that information has passed or will pass between them that is not in the public domain and that such information may be designated by either Party (the "designating Party") as commercially sensitive. Upon receipt of such designation, the receiving Party will not communicate such commercially sensitive information to anyone without the prior and express approval of the designating Party. The Parties agree that this Agreement in its entirety, including the schedules attached hetero, constitutes commercially sensitive information.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed in duplicate by their respective officer thereunto duly authorized, as of the date first herein above written.

JELD-WEN, Inc.

Witness: _____

By: _____
Philip Orsino
President


STEVES and SONS, INC.

Witness: _____

By: _____
Edward G. Steves
Chief Executive Officer

**Schedule 1**

**Initial Price**

All Molded (Except PreFinished White, PreStained or Comm.)

Delivered Price

| Size | Price |
|---|---|
| 12 X 80 | 1.66 |
| 14 X 80 | 1.92 |
| 15 X 80 | 2.06 |
| 16 X 80 | 2.19 |
| 18 X 80 | 2.46 |
| 20 X 80 | 2.73 |
| 24 X 80 | 3.27 |
| 26 X 80 | 3.53 |
| 28 X 80 | 3.80 |
| 30 X 80 | 4.07 |
| 32 X 80 | 4.34 |
| 34 X 80 | 4.60 |
| 36 X 80 | 4.88 |
| 12 X 84 | 3.41 |
| 14 X 84 | 3.61 |
| 15 X 84 | 3.75 |
| 16 X 84 | 3.79 |
| 18 X 84 | 3.85 |
| 20 X 84 | 4.03 |
| 24 X 84 | 4.25 |
| 26 X 84 | 4.62 |
| 28 X 84 | 4.62 |
| 30 X 84 | 4.84 |
| 32 X 84 | 5.07 |
| 34 X 84 | 5.26 |
| 36 X 84 | 5.43 |
| 12 X 96 | 6.33 |
| 14 X 96 | 6.50 |
| 15 X 96 | 6.58 |
| 16 X 96 | 6.65 |
| 18 X 96 | 6.82 |
| 20 X 96 | 6.99 |
| 24 X 96 | 7.33 |
| 26 X 96 | 8.01 |
| 28 X 96 | 8.01 |
| 30 X 96 | 8.43 |
| 32 X 96 | 8.79 |
| 34 X 96 | 9.15 |
| 36 X 96 | 9.50 |

| Craftsman Designs 6/8 - 2050 mm | | |
|---|---|---|
| Size | | USD |
| Nominal in | Actual mm | |
| 22 | 568 | $4.55 |
| 24 | 620 | $4.55 |
| 28 | 721 | $4.99 |
| 30 | 772 | $5.24 |
| 32 | 823 | $5.51 |
| 36 | 926 | $5.93 |

| Craftsman Designs 7/0 - 2145 mm | | |
|---|---|---|
| Size | | USD |
| Nominal in | Actual mm | |
| 22 | 568 | $4.92 |
| 24 | 620 | $4.92 |
| 28 | 721 | $5.37 |
| 30 | 772 | $5.62 |
| 32 | 823 | $5.87 |
| 36 | 926 | $6.30 |

| Finished White 6/8 - 2050 mm | | |
|---|---|---|
| Size | | USD |
| Nominal in | Actual mm | |
| 16 | 416 | $4.91 |
| 18 | 467 | $4.99 |
| 20 | 518 | $5.15 |
| 24 | 620 | $5.39 |
| 26 | 670 | $5.58 |
| 28 | 721 | $5.76 |
| 30 | 772 | $6.02 |
| 32 | 823 | $6.24 |
| 34 | 873 | $6.43 |
| 36 | 926 | $6.62 |

| Prestained 6/8 - 2050 mm | | |
|---|---|---|
| Size | | USD |
| Nominal in | Actual mm | |
| 16 | 416 | $7.70 |
| 18 | 467 | $7.86 |
| 20 | 518 | $8.19 |
| 24 | 620 | $8.72 |
| 26 | 670 | $9.15 |
| 28 | 721 | $9.50 |
| 30 | 772 | $10.01 |
| 32 | 823 | $10.51 |
| 34 | 873 | $10.87 |
| 36 | 926 | $11.29 |

Schedule 2

**JW Key Inputs**

Base as of: **DATE**

| Raw Material | Base Cost Factor | Period Change | Percentage of Costs | Weighted Change |
|---|---|---|---|---|
| Wood | 100.00% | 0.00% | 27% | 0.00% |
| Resin, wax, oil and sealer | 100.00% | 0.00% | 31% | 0.00% |
| Paint | 100.00% | 0.00% | 16% | 0.00% |
| Packaging | 100.00% | 0.00% | 2% | 0.00% |
|  |  |  |  | 0.00% |
| **Energy** |  |  |  |  |
| Electric power prices | 100.00% | 0.00% | 16% | 0.00% |
| Natural gas prices | 100.00% | 0.00% | 6% | 0.00% |
| Boiler fuel | 100.00% | 0.00% | 2% | 0.00% |
| **Total percentage of costs** |  |  | 100.00% |  |
| Agreed upon effect on molded doorskin price |  |  | 50.00% | 0.00% |
| **Percentage change in the JELD-WEN Key Inputs** |  |  |  | 0.00% |