**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| STEVES AND SONS, INC.,　　　　　）<br>　　　　　　　　　　　　　　　　）<br>　　　　　Plaintiff,　　　　　　　）<br>　　　　　　　　　　　　　　　　）<br>　　　v.　　　　　　　　　　　　　）<br>　　　　　　　　　　　　　　　　）<br>JELD-WEN, INC.,　　　　　　　　）<br>　　　　　　　　　　　　　　　　）<br>　　　　　Defendant.　　　　　　 ）<br>　　　　　　　　　　　　　　　　） | Civil Action No. 3:20-cv-000098 |

## JELD-WEN'S RESPONSE TO STEVES' MEMORANDUM REGARDING CURRENT CIRCUMSTANCES

Steves' most recent memorandum, like its prior pleadings in this matter, is devoid of any new information or arguments justifying its request for extraordinary preliminary injunctive relief. To the contrary, Steves' memorandum (1) mischaracterizes JELD-WEN's recent Covid-19-related business interruption; (2) further undermines Steves' repeated claims of irreparable harm; and (3) confirms the unfair and absurd nature of the relief Steves seeks in its preliminary injunction motion.

**I.      Steves mischaracterizes the coronavirus' impact on JELD-WEN's operations.**

Steves continues to invent facts to support its narrative.  Its memorandum asserts—with no factual support—that JELD-WEN's Towanda doorskin plant "stood 'idle' for barely over a day before resuming operations."  Steves Mem. at 2.  This is wrong.  After receiving the Governor of Pennsylvania's March 19, 2020 Order, JELD-WEN halted its production the following evening (March 20), and it did not resume production at Towanda until March 25.[1]  In total,

---

[1] As JELD-WEN explained in its March 26 memorandum, upon receipt of the Order, it immediately retained outside advisors to seek a waiver or reclassification of its operations,

notwithstanding its vigorous efforts, Towanda was out of service ███████████, not "barely over a day" as Steves represents. Steves also claims—again without support—that "JELD-WEN's doorskin operations have not been impaired by the coronavirus." *Id.* at 4. But the Towanda shutdown caused lost production of approximately ██████ doorskins, which will have a material impact on JELD-WEN's ability to fulfill door and doorskin orders in the coming weeks.

Steves' misrepresentations betray an underlying truth, which is that the effects of the coronavirus further undermine Steves' right to injunctive relief. Steves can only evade this reality by minimizing or ignoring the coronavirus' impact. But because a preliminary injunction is "an extraordinary remedy," a plaintiff must make a "clear showing" that it is entitled to that relief. *Mt. Valley Pipeline, LLC v. W. Pocahontas Props. Ltd.*, 918 F.3d 353, 366 (4th Cir. 2019). Steves' memorandum confirms that the parties have been unevenly impacted by the coronavirus. While Steves claims to have "maintained its normal operations and expects to continue to do so," Steves Mem. at 3, ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ The Court must consider this reality

---

working across the weekend of March 21-22. The Governor eventually updated the list of "life sustaining" businesses on March 24, after which JELD-WEN immediately started recalling its employees and preparing the plant for operation. Even so, actual doorskin production did not resume until March 25.



when assessing "the effect on each party of the granting or withholding of the relief requested." *Winter v. Nat'l Resources Def. Council*, 555 U.S. 7, 24 (2008).  Given the challenges JELD-WEN has faced and may continue to face in light of the Covid-19 situation, the negative impact of the injunction would be even more severe than previously expected.

In addition, uncertainty itself weighs against granting a preliminary injunction.  Steves must make "a clear showing" that the balance of equities tips in its favor.  *Billups v. City of Charleston*, 194 F. Supp. 3d 452, 479 (D.S.C. 2016).  This "stringent . . . standard" cannot be met where the volatility of a situation prevents an accurate appraisal of just how severe the harm to the nonmoving party would be.  *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 349 (4th Cir. 2009); *see also W.B. v. Crossroads Academy-Central St.*, No. 4:19-cv-00682, 2019 WL 6257963, at *3 (W.D. Mo. Nov. 22, 2019) (denying a preliminary injunction where "[t]he harm to the [defendant's] program . . . would be unpredictable").

## II.   Steves' claims about irreparable harm are fatally inconsistent and have proven false.

The company portrayed in Steves' most recent memorandum is unrecognizable from the one presented to the Court since this case began.  Instead of a company struggling to survive under the weight of a supposedly "tarnished" reputation, the Court is now presented with a company enjoying "robust" demand and a "surge" of orders notwithstanding the most precipitous economic decline in the nation's history.  Steves Mem. at 3.  It seems Steves' claims about irreparable harm consistently expire as soon as the incentives of the moment change.  This plasticity, standing alone, is reason enough to deny Steves' motion.

Steves is no more credible when it claims that "JELD-WEN has . . . fail[ed] to deliver more than one million interior molded doorskins that Steves is entitled to."  Steves Mem. at 4 (emphasis omitted).  Indeed, only yesterday, Steves chose not to order ███████████ of doorskins that

JELD-WEN told Steves were available for purchase this week.  *See* Ex. 1 at 9.  In fact, this has become Steves' consistent practice.

For example, during the preliminary injunction hearing on March 5, Steves claimed ███

████████████████████████ S. Steves Decl. Ex. P (attached as Ex. 2).  ████

████████████████████████████████████████

████████████████  *See* Ex. 1 at 6–9.  The table below shows the number of Cambridge doorskins JELD-WEN has offered to Steves over the past four weeks and Steves' corresponding orders:

| Cambridge Doorskins | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Week** | | **Quantity Offered** | | **Quantity Ordered** | | **Difference** | | | |
|  | ██ |  | ██ |  | ██ |  | ██ |  |  |
|  | ██ |  | ██ |  | ██ |  | ██ |  |  |
|  | ██ |  | ██ |  | ██ |  | ██ |  |  |
|  | ██ |  | ██ |  | ██ |  | ██ |  |  |
|  |  |  |  |  | **Total:** |  | ██ |  |  |

If Steves were really being "shorted" these doorskins, as it insisted earlier this month, it begs the question of why Steves would decline to order ███████ of doorskins in recent weeks.

This is far from an isolated example.  Despite claiming that it is being deprived of Santa Fe, Madison, and Continental doorskins, just this week Steves chose not to purchase more than ███ of these doorskins.  *See* Ex. 1 at 9.  And even with respect to Rockport and Carrara doorskins, Steves—as shown below—has routinely chosen not to purchase the full amount JELD-WEN has been able to offer:

**HIGHLY CONFIDENTIAL**

| Rockport Doorskins | | | |
|---|---|---|---|
| **Week** | **Quantity Offered** | **Quantity Ordered** | **Difference** |
| ██ | ██ | ██ | ██ |
| | | | |
| | | | |

| Carrara Doorskins | | | |
|---|---|---|---|
| **Week** | **Quantity Offered** | **Quantity Ordered** | **Difference** |
| ██ | ██ | ██ | ██ |
| | | | |
| | | | |

Like its earlier misrepresentations about going out of business and a tarnished reputation, Steves' claim ███████████████████████ runs aground of the evidence.[3]

## III.    Recent events expose the unfairness of the requested injunction.

Steves closes its memorandum by noting that "[s]hould a dramatic and unforeseen development arise, JELD-WEN could seek to modify any injunction issued by the Court." Steves Mem. at 5. But this advisement undermines Steves' position even more by acknowledging that its proposed injunction would not be appropriate in such a scenario.

The Supply Agreement already addresses "dramatic and unforeseen development[s]" through its *force majeure* clause (Paragraph 11). And that provision states that, in the event of a delay in performance or non-performance reasonably unforeseeable and beyond JELD-WEN's

---

[3] 

**HIGHLY CONFIDENTIAL**

control, "JELD-WEN will follow the Allocation procedures outlined in [¶ 20]."  Supply

Agreement ¶ 11 (attached as Ex. 3).  The Supply Agreement's allocation provision, therefore, is

meant to apply the same way during a period of increased demand as it is during a *force majeure*.

This symmetry is fatal to Steves' contractual argument because Steves' approach to allocation

makes no sense in a *force majeure* context.

Under Steves' approach, if a *force majeure* were to close JELD-WEN's Towanda facility

indefinitely, then Steves would be entitled to 100% of JELD-WEN's Carrara production from its

other facilities throughout the *force majeure*, leaving JELD-WEN and its other doorskin customers

with none of this design.[4]  Nothing in the Supply Agreement's text authorizes such a one-sided

and absurd result, and Steves has not even tried to argue that this interpretation aligns with the

parties' understanding when they signed the Supply Agreement.  In fact, evidence of the parties'

intent supports the allocation methodology that JELD-WEN has adopted.  *See* Orsino Decl. (Ex.

4) at 1–2 ███████████████████████████████████████████████████

███████████████████████████ Email from S. Steves to E. Steves (Dec. 9, 2011) (Ex. 5) at 1

████████████████████████████████████████████████████████████████

█████████████████

Last week's Towanda closure provided a stark example of how Steves' injunction would

operate in the real world.  Under Steves' world, it would be able to swallow JELD-WEN's entire

production of one of JELD-WEN's most popular doorskin designs, leaving none for JELD-WEN

or JELD-WEN's other contract customers.  The alternative approach—which JELD-WEN has

implemented—allocates a portion of production to each doorskin purchaser on a fair and equitable

---

[4] ████████████████████████████████████████████████████
████████████████████████████████

**HIGHLY CONFIDENTIAL**

basis.  Steves has not even demonstrated that it is being harmed by this approach, much less that it is suffering irreparable harm entitling it to injunctive relief.

## <u>CONCLUSION</u>

For all of the above reasons, Steves' motion for a preliminary injunction should be denied.

**HIGHLY CONFIDENTIAL**

Dated: March 28, 2020

Respectfully submitted,

JELD-WEN, Inc.

By counsel

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
Gregory J. DuBoff (VSB # 82062)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com
gduboff@mcguirewoods.com

*Attorneys for Defendant*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of March 2020, the following counsel of record have

been served using the CM/ECF system, which will then send a notification of such filing (NEF) to

the registered participants as identified on the NEF to receive electronic service, including:

Lewis F. Powell III
John S. Martin
Alexandra L. Klein
Maya M. Eckstein
Douglas M. Garron
R. Dennis Fairbanks, Jr.
Michael Shebelskie
William H. Wright, Jr.
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200 – Tel.
(804) 788-8218 – Fax
lpowell@huntonAK.com
martinj@huntonAK.com
aklein@huntonAK.com
meckstein@huntonAK.com
dgarrou@huntonAK.com
dfairbanks@huntonAK.com
mshebelskie@huntonAK.com
cwright@huntonAK.com

Ted Dane
Glenn Pomerantz
Gregory Sergi
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9288 – Tel.
(213) 683-4088 – Fax
ted.dane@mto.com
glenn.pomerantz@mto.com
gregory.sergi@mto.com

Kyle Mach
Emily C. Curran-Huberty

Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000 – Tel.
(415) 512-4077 – Fax
kyle.mach@mto.com
emily.curran-huberty@mto.com

*Attorneys for Plaintiff*

Marvin G. Pipkin
Kortney Kloppe-Orton
Pipkin Law
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
(210) 731-6495 – Tel.
(210) 293-2139 – Fax

*Of Counsel*

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com

*Attorney for Defendant*