**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| STEVES AND SONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 3:20-cv-000098 |
| JELD-WEN, INC., | ) ) ) |
| Defendant. | ) ) ) |

## JELD-WEN'S MEMORANDUM REGARDING DISCOVERY DISPUTES

JELD-WEN submits this memorandum to address outstanding discovery disputes between the parties. This memorandum will first describe Steves' discovery responses that JELD-WEN believes are insufficient and will then address the issues Steves has raised with certain of JELD-WEN's discovery responses. JELD-WEN does want to let the Court know that the parties have worked very hard over the last 48 hours to narrow the discovery issues being presented.

### Steves' Discovery Responses

**RFP No. 30:** All Documents and Communications relating to Your inventory for DoorSkins and Doors, by style and SKU, from January 1, 2018 to the present.

Steves responded that it would not "provide[] any documents in response to this request beyond the data file being prepared for data request number 10." Request number 10 sought Steves' month-end and year-end inventory data.

JELD-WEN believes that this request is both relevant and proportional to the needs of this case. Steves claims that its inventory has been depleted as a result of JELD-WEN's failure to fulfill doorskin orders. Therefore, Steves' internal communications regarding inventory are relevant in this case. Communications concerning Steves inventory are also relevant to Steves' claimed

damages in this case. If Steves' doorskin orders were made for the purpose of filling (or expanding) inventory, rather than to fulfill its customers' orders, this would be highly relevant to the damages Steves' claims to have suffered in connection with unfilled orders.

The parties have conferred on this issue. JELD-WEN offered to limit its requests to documents concerning increases or decreases in Steves' inventory, but Steves continues to object. Steves later offered to provide the contents of one employee's email folder that purportedly contains "communications with Steves employees at door plants about inventory increase needs." JELD-WEN does not find this alternative to be acceptable because it would exclude any communications between Steves' senior management concerning inventory or how Steves' perceived inventory needs influenced the number or doorskins it purchased from JELD-WEN.

**Interrogatory No. 4:** For each of the claims alleged in the Complaint, separately state the total amount of damages You seek and specify how such amount was determined.

Steves objects to this Interrogatory as premature because it claims it seeks information that is properly the subject of expert disclosures. JELD-WEN does not believe that this Interrogatory is premature. JELD-WEN understands that Steves' damages calculation will undoubtedly need to be updated based on expert analysis, but that does not relieve Steves of its obligation to provide its current calculation of damages, which is necessary for JELD-WEN's trial preparation. Steves later supplemented its response by pointing JELD-WEN to Steves' Initial Disclosures, but these disclosures are themselves insufficient. Federal Rule of Civil Procedure 26(A)(iii) requires a "computation of each category of damages claimed by the disclosing party." Steves' Initial Disclosures do not contain a computation at all, they merely refer to general categories of damages.

**Interrogatory No. 11:** For each business relationship identified in response to Interrogatory No. [10], describe in detail how JELD-WEN's alleged conduct has injured You, including the amount of profit Steves alleges was lost for each relationship.

**Interrogatory No. 13:** For each business contract identified in response to Interrogatory No. [12], describe in detail how JELD-WEN's alleged conduct has injured You, including the amount of profit Steves alleges was lost for each contract.

Steves has failed to answer these Interrogatories with respect to lost profits. JELD-WEN understands that Steves is working on supplementing its responses to these Interrogatories, but JELD-WEN also understands from the meet-and-confer process that Steves' supplement will not provide an estimate of lost profits for each relationship or contract allegedly damaged by JELD-WEN's conduct.

### JELD-WEN's Discovery Responses

**Interrogatory No. 1:** List all interior molded doorskin plants that you owned, in whole or in part, as of January 1, 2013, including all domestic and foreign plants such as, but not limited to, your interior molded doorskin plant in Latvia. With respect to each plant identified, state for each year beginning in 2013: (a) the plant's design capacity; (b) the plant's actual yearly production (including for 2020 as of the date of your response); (c) the plant's actual yearly production by design family (including for 2020 as of the date of your response); (d) the plant's overall yearly production capacity accounting for mix and regularly scheduled downtime (specifying what JELD-WEN considers regularly scheduled downtime to be by year); and (e) the plant's yearly production capacity accounting for mix and regularly scheduled downtime by design family.

JELD-WEN believes that the parties' main dispute with respect to this Interrogatory concerns JELD-WEN's doorskin plant in Latvia. JELD-WEN objects to providing information about its Latvian plant's production or production capacity as irrelevant to any of the claims in this case. With respect to allocation, the Supply Agreement specifically references "JELD-WEN's current production capacity in North America." JELD-WEN production capacity outside of North America, therefore, is irrelevant to the question of whether JELD-WEN was justified in declaring

3

allocation. JELD-WEN has provided Steves with information concerning the number of doorskins JELD-WEN imported from Latvia for each of the past three years.

**Interrogatory No. 2:** Describe in detail your understanding of "design capacity," "production capacity," "theoretical capacity," "demonstrated production capacity," "actual production capacity," and any other metric that JELD-WEN uses to measure its production capacity for interior molded doorskins.

JELD-WEN has provided definitions of each of the terms listed in Interrogatory Number 2. But it has also informed Steves that these definitions are not standardized across JELD-WEN or necessarily used in the exact same way by every JELD-WEN employee. For this reason, any individual's statement about "production capacity" or a related term must be understood in the context in which it was made. Nevertheless, JELD-WEN provided "general explanation for what each of these terms mean" in an effort to fully respond to this Interrogatory. JELD-WEN cannot impose a static definition on these terms that does not actually exist and that would not accurately reflect the differing ways in which these terms can be used by JELD-WEN's employees.

**Interrogatory No. 3:** Identify which interior molded doorskin designs you were experiencing a shortage of capacity in prior to Allocation that led to JELD-WEN declaring Allocation and when you were made aware of that shortage. With respect to each doorskin design you experienced a shortage of prior to Allocation, provide the actual number of doorskins demanded (i.e., ordered or otherwise requested) by external doorskins customers and JELD-WEN Door per week and the number of doorskins you produced for each week there was a shortage.

JELD-WEN has attempted to respond to this Interrogatory to the best of its abilities. JELD-WEN responded that, leading up to allocation, it experienced a number of unexpected spikes in demand for particular doorskin designs. In particular, JELD-WEN experienced a significant increase in demand for Carrara and Rockport doorkins, which contributed significantly to JELD-WEN's need to declare allocation. On the issue of whether JELD-WEN experienced a shortage of any other doorskin design, JELD-WEN has produced to Steves its purchase orders for this period and its production data by design family. JELD-WEN is currently working to identify for Steves

4

the specific bates number corresponding to the referenced purchase orders.

**Interrogatory No. 11:** Identity all sources of interior molded doorskins outside of the United States— including JELD-WEN's own foreign doorskin plants—that are either currently shipping interior molded doorskins to JELD-WEN in the United States or from which JELD-WEN has considered acquiring interior molded doorskins since January 1, 2018. For those foreign sources that have actually shipped interior molded doorskins to JELD-WEN, provide the volume, by design family, of skins received by JELD-WEN each week since January 1, 2018.

JELD-WEN has answered this Interrogatory with respect to any doorskin source outside of the United States that is currently shipping doorskins to JELD-WEN in the United States. JELD-WEN objects to Steves' request for any foreign source "from which JELD-WEN has *considered* acquiring interior molded doorskins since January 1, 2018." ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ This information is irrelevant to any of Steves' claims in this case. Of course, if JELD-WEN were to start importing doorskins from a foreign supplier, it would update its response to this Interrogatory.

**Interrogatory No. 12:** Describe in detail the "contingency plan" accounting for the loss of interior molded doorskin supply that Mr. Castillo noted in his February 24, 2020 deposition.

JELD-WEN has answered this Interrogatory with all available non-privileged information. JELD-WEN responded that it is exploring its options to address any capacity issues that would result from the closure of the Towanda plant, ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ Given the close nexus between these contingency plans and the pending appeal, JELD-WEN is developing these plans in close coordination with counsel, so any additional information is protected by the attorney-cleint

5

privilege. If additional non-privileged information relevant to this Interrogatory is developed and documented, JELD-WEN would, of course, supplement its response.

**Interrogatory No. 15:** Provide all of the information requested by the Court on the telephone call held on March 4, 2020.

JELD-WEN objects to the Interrogatory on several grounds. First, this Interrogatory does not seek any discrete information, it merely seeks to piggyback on the Court's request from March 4, 2020. In addition, JELD-WEN produced information responsive to the Court's request on March 5, 2020, and JELD-WEN understood the Court to be satisfied with the information provided. This Interrogatory is also vague because JELD-WEN believes it has provided all of the information the Court asked for on March 5, either to the Court directly or through subsequent discovery. JELD-WEN has asked Steves to identify any information described in the Court's request that JELD-WEN has not produced, but Steves has refused to do so.

**RFP No. 3:** Production records, on a monthly and weekly basis, reflecting the number of interior molded doorskins produced by plant, style and SKU, from January 1, 2018 to the present.

**RFP No. 4:** Inventory records reflecting month-end and week-end inventory balances for interior molded doorskins and interior molded doors by plant (including, but not limited to, JELD-WEN Fiber and JELD-WEN Door), and by style and SKU, from January 1, 2018 to the present.

**RFP No. 9:** Transaction data from JELD-WEN's general ledger on sales from all JELD-WEN plants (including, without limitation, JELD-WEN Fiber and JELD-WEN Door plants), for the period from July 1, 2017 to the present, with dates determined by the invoice date for each transaction. Such data should come from JELD-WEN's Titan database, if available, and should include.

JELD-WEN believes the only dispute between the parties with respect to these requests concerns JELD-WEN's doorskin plant in Latvia. JELD-WEN objects to producing the information sought in these requests from its Latvian plant for the same reasons as articulated in response to Interrogatory Number 1, above.

**RFP No. 13:** Any documents not yet produced that are responsive to Steves' First Requests for Production served on February 15, 2020, attached to these requests as Exhibit A, including documents from custodians likely to have documents responsive to those requests whose files were not searched when responding to Steves' First Requests for Production.

JELD-WEN initially responded to this request by stating that it believed it had produced all documents responsive to Steves' First Requests for Production. Steves later asked JELD-WEN to provide a list of the custodians searched in response to this request, which JELD-WEN did. Steves then asked JELD-WEN to "expand those prior collections (or current searches) to include files from JELD-WEN's CEO, Mr. Michel." Following the meet-and-confer process, JELD-WEN agreed to add Mr. Michel as a custodian.

After JELD-WEN informed Steves that it would add Mr. Michel, Steves responded by asking JELD-WEN to search the files of Mr. John Linker, JELD-WEN's Chief Financial Officer, and an unknown number of additional custodians that Steves did not identify. Steves had never previously raised Mr. Linker as a potential custodian. The parties have not had time to meet-and-confer on this issue, so JELD-WEN does not believe it is properly before the Court at this time.

**RFP No. 22:** All communications between JELD-WEN and its board chair, Matthew Ross of Onex, and board member, Anthony Munk of Onex, within either JELD-WEN's files or Onex's files since January 1, 2018 regarding any topic listed in the immediately preceding request.

JELD-WEN has agreed to produce all documents responsive to this request within its possession, custody, and control. JELD-WEN objects to searching Onex's files for two reasons. First, Onex's files are not within JELD-WEN's possession, custody, and control. Second, this request seeks communications between JELD-WEN and Mr. Ross or Mr. Munk. Any copies of these communications, therefore, will be available on JELD-WEN's own systems. It is disproportionate to the needs of this case (and this request) to require JELD-WEN to pursue additional copies of these documents from a third party.

7

## **CONCLUSION**

JELD-WEN respectfully asks that the Court Order Steves to fully respond to JELD-WEN's discovery requests. In addition, JELD-WEN asks the Court to deny Steves' requests for additional responses from JELD-WEN.

Dated: April 8, 2020

Respectfully submitted,

JELD-WEN, Inc.

By counsel

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
Gregory J. DuBoff (VSB # 82062)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com
gduboff@mcguirewoods.com

*Attorneys for Defendant*

CERTIFICATE OF SERVICE

The undersigned certifies that the following counsel of record have been served via email with a true and correct copy of the foregoing on April 8, 2020.

    Lewis F. Powell III
    John S. Martin
    Alexandra L. Klein
    Maya M. Eckstein
    Douglas M. Garron
    R. Dennis Fairbanks, Jr.
    Michael Shebelskie
    William H. Wright, Jr.
    Hunton Andrews Kurth LLP
    Riverfront Plaza, East Tower
    951 East Byrd Street
    Richmond, VA 23219
    (804) 788-8200 – Tel.
    (804) 788-8218 – Fax
    lpowell@huntonAK.com
    martinj@huntonAK.com
    aklein@huntonAK.com
    meckstein@huntonAK.com
    dgarrou@huntonAK.com
    dfairbanks@huntonAK.com
    mshebelskie@huntonAK.com
    cwright@huntonAK.com

    Ted Dane
    Glenn Pomerantz
    Gregory Sergi
    Munger, Tolles & Olson LLP
    350 South Grand Avenue, 50th Floor
    Los Angeles, CA 90071
    (213) 683-9288 – Tel.
    (213) 683-4088 – Fax
    ted.dane@mto.com
    glenn.pomerantz@mto.com
    gregory.sergi@mto.com

    Kyle Mach
    Emily C. Curran-Huberty
    Munger, Tolles & Olson LLP
    560 Mission Street, 27th Floor
    San Francisco, CA 94105

(415) 512-4000 – Tel.
(415) 512-4077 – Fax
kyle.mach@mto.com
emily.curran-huberty@mto.com

*Attorneys for Plaintiff*

Marvin G. Pipkin
Kortney Kloppe-Orton
Pipkin Law
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
(210) 731-6495 – Tel.
(210) 293-2139 – Fax

*Of Counsel*

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com

*Attorney for Defendant*