UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| STEVES AND SONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:20-CV-00098-REP |
| ) | |
| JELD-WEN, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**JELD-WEN INC.'S RESPONSE TO STEVES AND SONS, INC.'S STATEMENT OF POSITION REGARDING SECURITY REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 65(c)**

Steves concedes that under controlling Fourth Circuit precedent, the purpose of an injunction bond is to provide "a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction," and so the size of the bond must reflect "the gravity of the potential harm to the enjoined party." ECF No. 130 ("Steves' Statement") at 3 (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999)); *see also* Fed. R. Civ. P. 65(c) (bond should be set at what is "proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained"). For the reasons JELD-WEN has explained, complying with the Court's preliminary injunction order will subject it to costs of at least ███████, and so this Court should set the bond at that amount. Steves' counterproposal—that this Court should set the bond at zero or a nominal amount, or at $1 million at most—fails to even remotely reflect the real harm that complying with the injunction will cause JELD-WEN, and is wholly unpersuasive.

Steves begins by arguing that its likelihood of success at trial means there "is no need for a substantial bond" because the risk of any harm to JELD-WEN from a wrongful injunction is "remote." Steves' Statement at 2-3 (citing, *inter alia*, *Hoechst*, 174 F.3d at 421 n.3). Of course, showing a

likelihood of success on the merits cannot be enough to warrant a nominal bond—otherwise, Rule 65(c) would never require a meaningful bond at all, since proving a likelihood of success on the merits is already necessary to obtain an injunction. *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In contending otherwise, Steves misreads the Fourth Circuit's decision in *Hoechst*. That case does not say that whether the harm is "remote" depends on the strength of the enjoined party's case. *See* 174 F.3d at 421 & n.3. Instead, it stands only for the unremarkable proposition that a low bond may be appropriate when it is not clear whether complying with the injunction will actually cause the enjoined party any harm (regardless of whether the injunction is eventually dissolved). That is why *Hoechst* cites *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974)—a case in which, as the *Hoechst* court recognized, there was an "absence of evidence" that the enjoined party would be injured. *Hoechst*, 174 F.3d at 421 n.3. Here, by contrast, there is ample evidence that complying with the Court's injunction will cause JELD-WEN tens of millions of dollars in harm.

Steves derives equally little support from the Fourth Circuit's unpublished decision in *Candle Factory, Inc. v. Trade Associates Group, Ltd.*, 23 F. App'x 134 (4th Cir. 2001) (per curiam). In that appeal, the appellant argued that it was improper for the district court to enter a preliminary injunction *at all*; as such, the court's favorable comments about the amount of the bond were dicta at best, and served only to support its overall conclusion that the *injunction itself* was proper. *Id.* at 139; *see, e.g.*, *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 285 (4th Cir. 2002) (considering bond amount in deciding whether to vacate preliminary injunction for failure to adequately weigh hardship to the enjoined party). That hardly suggests that a district court should rest its decision on the bond amount on its view of the merits of the case.

Steves is also wrong to suggest that there is no adequate evidence that complying with the injunction will cause JELD-WEN any harm. *Contra* Steves' Statement at 4-5. As a threshold matter,

Steves' argument in a footnote that this Court should ignore the detailed evidence of harm that JELD-WEN submitted with its bond motion is near-frivolous. *See id.* at 6 n.3. As Steves concedes, the Court's preliminary injunction order does not prohibit JELD-WEN from introducing new evidence of the harm it will suffer while the case is pending, *id.*, and Steves cites no case holding that a party should be precluded from introducing new evidence relevant to the bond amount. The cases that Steves does cite show only that the amount of the bond must be based on record evidence rather than attorney argument or judicial speculation; they nowhere suggest that a party should be prohibited from submitting evidence directly relevant to the bond amount. *See Hoechst Diafoil Co.*, 174 F.3d at 421 n.3; *Int'l Controls Corp.*, 490 F.2d at 1356; *Fleet Feet, Inc. v. Nike, Inc.*, 419 F. Supp. 3d 919, 949 (M.D.N.C. 2019); *RLI Ins. Co. v. Nexus Servs., Inc.*, 2018 WL 3244413, at *13 (W.D. Va. July 2, 2018).[1] Neither law nor logic supports the view that a party asking a court to set a bond in a certain amount should be prohibited from presenting evidence for why that amount is appropriate.

Instead, Steves' view appears to be that JELD-WEN should have presented all its evidence of the proper bond amount at the preliminary injunction hearing itself. Steves' Statement at 6 n.3. That is wholly untenable. For one, there is no way that JELD-WEN could have known in advance the precise contours of the injunction the Court would issue more than a month after the preliminary injunction hearing concluded (let alone when it would be issued), and JELD-WEN could hardly have been expected to present evidence at the hearing calculating the precise dollar value of the harm it would suffer under any of the infinite possible injunctions this Court might have entered. Steves' theory also ignores the reality that circumstances have changed in the past six weeks (as they often will between the hearing on a preliminary injunction and a later determination of the proper bond

---

[1] In fact, in *Fleet Feet*, one of the cases upon which Steves relies, the court specifically noted after setting a $1 million bond that, "[s]hould Nike wish to seek a higher [bond] amount, it may file a motion to increase the security, *accompanied by additional evidentiary support.*" 419 F. Supp. 3d at 949 (emphasis added).

3

amount). JELD-WEN has factored into its revised analysis actual orders and updated forecasts—from both JELD-WEN's contract customers and Steves itself—that simply did not exist six weeks ago. *See generally* Decl. of D. Castillo ("Apr. 13, 2020 Castillo Decl.") (ECF No. 134) & Exs. A & B thereto. Moreover, Steves concedes that a party is free to request a modification to the bond as long as the injunction remains in force, *see* Steves' Statement at 3 n.1, which naturally requires presenting new evidence about the changed circumstances that warrant modifying the bond, *see Fleet Feet*, 419 F. Supp. 3d at 949. Steves cannot explain why such evidence should be permissible when a party is asking to modify an existing bond, but not when the party is requesting a bond in the first instance. Finally, given that the enjoined party bears the burden to show the appropriate bond amount, *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 465 (M.D.N.C. 2015), barring JELD-WEN from presenting the evidence necessary to carry that burden would make no sense whatsoever.[2]

Turning to that evidence, the facts that JELD-WEN has presented to this Court plainly support its request for a ▮▮▮▮▮▮▮▮ bond. JELD-WEN has set out in detail its basis for its estimation of the damages it will suffer from complying with the injunction, based on its measurements of its doorskin production capacity, actual and forecasted doorskin demand, and current doorskin inventory, and has explained how that estimation accounts for the aspects of its previous analysis that this Court discussed in its preliminary injunction opinion. *See* Apr. 13, 2020 Castillo Decl. ¶¶ 5-28 & Exs. A & B thereto; Mem. Op. (ECF No. 121) at 71-73. Based on Steves' prior unfilled orders, its actual orders for the next four weeks, and its forecasted demand from that point on, complying with the injunction will make it impossible for JELD-WEN to meet its other customers' need for ▮▮▮▮▮▮ doorskins over the next 16 weeks, and to fully meet its own needs for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Steves' argument is not only extraordinary, but also futile, as the record from the preliminary injunction hearing readily warrants a bond of far more than $1 million. *See* JELD-WEN's Suppl. Opp'n to Pl.'s Mot. for Prelim. Inj. (ECF No. 45) at Ex. 14 ("Mar. 2, 2020 Castillo Decl.") ¶¶ 15-19 & Mar. 2, 2020 Castillo Decl. Ex. E; Mar. 6, 2020 Prelim. Inj. Hr'g Tr. (ECF No. 60) at 88:6-25.

███████████████ doorskins during that period. *See* JELD-WEN's Mem. in Supp. of Mot. for Rule 65(c) Bond ("JELD-WEN Mem.") (ECF No. 133) at 4-5; Apr. 13, 2020 Castillo Decl. ¶¶ 12-20. Based on those doorskin shortages, JELD-WEN will lose sales of some ██████ doors and

████████████████████████████████████████████████████████████████████

█████████████████ *See* JELD-WEN Mem. at 5-6; Apr. 13, 2020 Castillo Decl. ¶¶ 22-27. That evidence fully demonstrates the need for a bond in the amount that JELD-WEN requests.

Finally, the evidence that JELD-WEN has presented also refutes Steves' remaining assertions. First, Steves claims that JELD-WEN will suffer little harm because this case is on an expedited schedule and trial is merely a few months away. Steves' Statement at 5. But the whole point of a Rule 65(c) bond is to protect against damages that may be suffered in the time between the entry of the preliminary injunction and final resolution of the case, and JELD-WEN's evidence is keyed precisely to that timeframe. That evidence shows that even with expedition, JELD-WEN still will lose ████████████████ from complying with the injunction just through the end of July, when JELD-WEN predicts a final decision will be entered. *See* JELD-WEN Mem. at 4 & n.2; Apr. 13, 2020 Castillo Decl. ¶ 3 & n.1.[3] Second, Steves' assertion that any doorskin shortage is likely to be small

---

[3] While acknowledging that "the trial date will be delayed in light of the COVID-19 pandemic," Steves' Statement at 5 n.2, Steves nonetheless accuses JELD-WEN of "dr[a]g[ging] its feet" in providing its availability to the Court, *id.* JELD-WEN has done no such thing. The Court only noted the need to postpone the trial from the originally scheduled June 1 trial date during the telephonic conference conducted by the Court last Thursday, while acknowledging the Governor of Virginia's March 30, 2020 stay-at-home order (not scheduled to expire until June 10) and the forthcoming order of the Chief Judge of the Eastern District of Virginia (which was issued the following day and which postponed and continued all trials through June 10, *see* Gen. Order No. 2020-12). *See* Apr. 9 2020 Tr. at 60:9-62:25. And while the Court noted the possibility of conducting a trial in late June, it also acknowledged the prospect that it would face difficulty empaneling a jury in light of the circumstances. *Id.* In any event, JELD-WEN is not freely "seek[ing] to push the trial into July or later," as Steves suggests, Steves' Statement at 5 n.2; rather, it is the realities of the global COVID-19 pandemic that will likely make it impossible to conduct a trial in June. As a result, JELD-WEN's proffered analysis (which evaluates the harm to JELD-WEN through an assumed July 27, 2020 entry of judgment) reflects the most realistic scenario in light of the pandemic and various travel and other restrictions in place for the foreseeable future.

and limited to ▓▓▓▓▓ styles is incorrect. *Contra* Steves' Statement at 6. In fact, the evidence shows that complying with the injunction will create a substantial shortage for ▓▓ doorskins such that JELD-WEN's other doorskin customers (let alone JELD-WEN itself) will not be able to access ▓▓▓▓ doorskins by the end of this period, and JELD-WEN itself will have a shortage in the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ styles. JELD-WEN Mem. at 4-5; Apr. 13, 2020 Castillo Decl. ¶¶ 12-20; *see also supra* at 4-5. This Court cannot simply ignore the damages that JELD-WEN stands to suffer as to those styles just because the impact on the ▓▓▓▓▓▓ styles will be most pronounced.

Third, Steves claims that JELD-WEN can import doorskins from its Latvia plant to make up for any shortage. Steves' Statement at 7. But JELD-WEN has already taken account of the doorskins it will receive from Latvia in calculating the harm it will suffer from complying with the injunction. *See* Apr. 13, 2020 Castillo Decl. ¶ 24. And as the actual evidence on that point demonstrates, those doorskins do little to mitigate the injury to JELD-WEN. JELD-WEN only imports ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ doorskins from the Latvia facility; there is no anticipated shortage of ▓▓▓▓▓▓ doorskins, and JELD-WEN does not anticipate receiving ▓▓▓▓ doorskins from Latvia until the third or fourth week of July, as the plant is scheduled to be closed for three weeks in late April due to the COVID-19 pandemic. *Id.* ¶ 24.

Fourth, Steves predicts that JELD-WEN has or is about to obtain new ▓▓▓▓▓ dies. Steves' Statement at 7. Again, JELD-WEN's analysis already takes account of those additional dies—including both the additional ▓▓▓ dies that JELD-WEN installed in its Dodson, Louisiana, plant over the past few weeks, and the additional ▓▓▓ dies that JELD-WEN expects to receive later this month. *See* Apr. 13, 2020 Castillo Decl ¶ 8. Finally, Steves asserts that JELD-WEN can go into "stretch" mode to ameliorate the shortage. Steves' Statement at 7. But JELD-WEN has already explained that it cannot stretch its operations any further; its four doorskin plants are already operating

6

at their maximum capacity, 24 hours a day, 7 days a week. *See* Apr. 13, 2020 Castillo Decl. ¶¶ 6-7. JELD-WEN's "stretch" mode refers to increasing production by postponing scheduled downtime—but JELD-WEN has no scheduled downtime planned for the second quarter of this year, making it impossible to increase production by postponing that (nonexistent) scheduled downtime. *See id.* In short, Steves' various critiques are uniformly misguided, and cast no doubt on the evidence JELD-WEN has put forward to show the substantial harm it will suffer from complying with the preliminary injunction.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in JELD-WEN's prior filings, *see generally* JELD-WEN Mem.; Apr. 13, 2020 Castillo Decl.; JELD-WEN's Suppl. Opp'n to Pl.'s Mot. for Prelim. Inj. (ECF No. 45) & Ex. 14 thereto (Mar. 2, 2020 Castillo Decl.), the Court should require Steves to post a bond of ▮▮▮▮▮▮▮ as security for the preliminary injunction order.

Dated: April 15, 2020

Respectfully submitted,

JELD-WEN, Inc.

By counsel

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com

*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of April 2020, the following counsel of record have been served using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Lewis F. Powell III
John S. Martin
Alexandra L. Klein
Maya M. Eckstein
Douglas M. Garron
R. Dennis Fairbanks, Jr.
Michael Shebelskie
William H. Wright, Jr.
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200 – Tel.
(804) 788-8218 – Fax
lpowell@huntonAK.com
martinj@huntonAK.com
aklein@huntonAK.com
meckstein@huntonAK.com
dgarrou@huntonAK.com
dfairbanks@huntonAK.com
mshebelskie@huntonAK.com
cwright@huntonAK.com

Ted Dane
Glenn Pomerantz
Gregory Sergi
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9288 – Tel.
(213) 683-4088 – Fax
ted.dane@mto.com
glenn.pomerantz@mto.com
gregory.sergi@mto.com

Kyle Mach
Emily C. Curran-Huberty

Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000 – Tel.
(415) 512-4077 – Fax
kyle.mach@mto.com
emily.curran-huberty@mto.com

*Attorneys for Plaintiff*

Marvin G. Pipkin
Kortney Kloppe-Orton
Pipkin Law
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
(210) 731-6495 – Tel.
(210) 293-2139 – Fax

*Of Counsel*

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com

*Attorney for Defendant*

9