UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| STEVES AND SONS, INC.,        ) | |
| ) | |
| Plaintiff,     ) | |
| ) | Civil Action No. 3:20-cv-000098 |
| v.     ) | |
| ) | |
| JELD-WEN, INC.,     ) | |
| ) | |
| Defendant.     ) | |
| ) | |

## STEVES AND SONS, INC.'S SUPPLEMENTAL BRIEF ON BOND REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 65(C)

In advance of argument on the amount of bond to be imposed under Rule 65(c), this Court identified several questions for the parties related to the determination of the bond.

*First*, the Court asked the parties how much a surety bond in the amount of $1 million or $20.3 million would cost in terms of the premium Steves would be required to pay. 4/17/2020 Hr'ng Tr. at 6:15-17; 7:2-4.

*Second*, the Court asked whether the amount of the bond will limit JELD-WEN's possible recovery if the preliminary injunction is vacated, and why that would be the rule. *Id.* at 8:18-9:3.

*Third*, the Court asked whether it should consider the new evidence submitted by JELD-WEN and, if so, whether the new evidence provides a basis for reconsidering the balance-of-hardship component of the preliminary injunction. *Id.* at 9:22-10:1.

The answers to each of those questions support imposing a nominal bond. JELD-WEN abjectly failed to carry ***its burden*** of demonstrating, based on ***credible evidence*** in the record, the quantum of harm it stands to suffer under the injunction. Steves should not be penalized and forced

to post an inflated (and blatantly arbitrary) security because JELD-WEN has no credible evidence of its potential damages.

## I.   THE PREMIUM AMOUNT ON A SURETY BOND IS NOT A PROPER BASIS ON WHICH TO IMPOSE A HIGHER SECURITY UNDER RULE 65(c)

Bonding requirements vary depending on the surety company, but Steves anticipates that its premium for a surety bond will be approximately 2% of the bond amount, plus a likely collateral requirement sufficient to cover the full amount of the bond. Steves does not know what kind of collateral will be required to secure a surety bond or how it will satisfy a collateral obligation for a $20.3 million bond, which could cover a significant portion of the company's assets. A surety bond does not function like an insurance policy—Steves will be required to indemnify the surety company as a condition of obtaining the bond. If the injunction is vacated on appeal, Steves will potentially be liable for the full amount of the security regardless of whether it posts the bond in cash or through a surety company. *Cf. Michigan Am. Fed'n of State Cty. & Mun. Employees Council 25, Local 1640 v. Matrix Human Servs*, 589 F.3d 851, 859–60 (6th Cir. 2009) ("On the plaintiff's side, posting a bond deters a plaintiff's rash application for an interlocutory injunction; paying a bond premium ***plus the chance of liability on it*** force a plaintiff to think carefully beforehand.") (emphasis added). Steves also has been advised that it may take at least two weeks to get a surety bond, and during that time period, Steves will continue to suffer the irreparable harm this Court identified in its opinion. *See* Mem. Op. 67–71, Dkt. No 121. If the bond was $1 million or less, Steves would immediately wire cash to the Court's account so that the injunction could take effect immediately.

In any event, Steves' ability to pay the premium for a $20.3 million surety bond is entirely irrelevant when initially determining the proper bond amount. Numerous district courts in this circuit have made clear that JELD-WEN, as the party enjoined, "bears the burden of establishing

2

the appropriate bond." *Volvo Grp. N. Am., LLC v. Truck Enterprises, Inc.*, No. 7:16-cv-00025, 2016 WL 1479687, at *6 (W.D. Va. Apr. 4, 2016); *accord Turn & Bank Holdings, LLC v. Avco Corp.*, No. 1:19-cv-503, 2019 WL 4773667, at *13 (M.D.N.C. Sept. 30, 2019) (same); *Creative Snacks, Co. v. Hello Delicious Brands LLC*, No. 1:17-cv-50, 2018 WL 1626522, at *8 (M.D.N.C. Mar. 30, 2018) (same); *Atlantic Coast Pipeline, LLC v. 5.63 Acres*, No. 6:17-cv-84, 2018 WL 1097051, at *17 (W.D. Va. Feb. 28, 2018) (same); *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 465 (M.D.N.C. 2015) (same); *Philips Elecs. N. Am. Corp. v. Hope*, 631 F. Supp. 2d 705, 724 n.14 (M.D.N.C. 2009) (same). That rule makes perfect sense because the enjoined party "is in the best position to determine the harm [it] will suffer from a wrongful injunction." *Volvo Grp.*, 2016 WL 1479687, at *6; *accord Lab. Corp. of Am. Holdings*, 84 F. Supp. 3d at 465 (same). And when, as here, the enjoined party "has failed to provide evidence to support its [bond] amount," the Court should simply disregard its "proposed bond figure." *Constellium Rolled Prod. Ravenswood, LLC v. United Steel & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, No. 2:18-cv-01404, 2018 WL 6329748, at *10 (S.D.W. Va. Dec. 4, 2018); *see also Turn & Bank Holdings, LLC*, 2019 WL 4773667, at *13 (similarly rejecting an increased bond where "defendants have not met their burden to establish a larger bond amount based on lost sales or otherwise").

Put simply, this Court should not consider the premium that Steves will need to pay when initially determining the amount of the bond. Arbitrarily imposing a higher security on Steves in the absence of any credible record evidence justifying such a bond improperly penalizes Steves when JELD-WEN cannot credibly prove its potential damages. Indeed, courts often take the opposite approach, ***reducing*** the bond amount based on a plaintiff's inability to pay, *see, e.g.*, *Temple University v. White*, 941 F.2d 201, 220 (3d Cir. 1991) (upholding a zero-dollar bond where

plaintiff would not "have been able to" post a bond), or imposing no bond where the plaintiff has

sufficient funds to pay the defendant's damages, *see, e.g.*, *Ohio State Univ. v. Thomas*, 738 F.

Supp. 2d 743, 757 (S.D. Ohio 2010) ("[B]ased on the fact that all four factors in the preliminary

injunction analysis favor [plaintiff] and [plaintiff] would certainly be able to pay any potential

damages awarded against it, the Court finds that no bond is required."). Steves has identified no

case in which a court has found that a plaintiff's ability to pay supports imposing a higher bond

than the amount supported by the reliable evidence offered by the party to be enjoined.

## II.   WHETHER THE AMOUNT OF THE BOND CAPS A DEFENDANT'S DAMAGES DOES NOT SUPPORT A HIGHER SECURITY AMOUNT

The Fourth Circuit has not conclusively decided whether the amount of the bond required

under Rule 65(c) serves as a cap on a defendant's damages if it is later determined that the

preliminary injunction was improperly issued. *But see First-Citizens Bank & Tr. Co. v. Camp*, 432

F.2d 481, 484–85 (4th Cir. 1970) (noting that defendant "correctly concede[d]" that "the amount

of the bond provided by [plaintiff] limits the amount of the recovery" in connection with a

preliminary injunction without discussing Rule 65(c) or explaining why that is the "correct[]"

rule). The Seventh Circuit, for example, has held that the amount of the Rule 65(c) security

functions as a cap on damages. *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.

2000).[1] In so holding, the Seventh Circuit relied on two United States Supreme Court decisions:

---

[1] *Mead Johnson* incorrectly implies that the defendant's "losses" were not clearly relevant "at the preliminary injunction hearing." 201 F.3d at 887. As this Court knows, one of the key factors in deciding whether to award a preliminary injunction is the balance between "the competing claims of injury," which requires consideration "[of] the effect on each party of the granting or withholding of the requested relief." Mem. Op. 71. (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). JELD-WEN thus had more than adequate notice that its own potential damages were an important part of the preliminary injunction analysis. Indeed, that explains why JELD-WEN put together and introduced the original "Impact Analysis" that this Court found "unreliable because it makes patently untrue or unsupported assumptions." *Id.* at 72;

*W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 770 n.14 (1983), and *Russell v. Farley*, 105 U.S. 433, 437-38 (1882). But neither *W.R. Grace & Co.* nor *Russell* states the legal basis for imposing such a cap on damages under Rule 65(c); indeed, neither case arises from a preliminary injunction or discusses Rule 65(c) at all.[2] Alternatively, Wright & Miller provides that "the surety's liability for damages cannot exceed the amount stated in the bonding agreement," but "[t]he parties who posted the bond are not so protected and they may be liable for damages or costs beyond the limits the court required in the surety agreement." 11A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2973 (3d ed.) (Apr. 2020 update).

This Court, however, need not resolve this issue because JELD-WEN may "file a motion to increase the bond, supported by evidence and a brief," ***if circumstances change***. *Turn & Bank Holdings, LLC*, 2019 WL 4773667, at *14; *Lab. Corp. of Am. Holdings*, 84 F. Supp. 3d at 466 (stating that the enjoined party "may move for adjustment of the bond amount while the preliminary injunction is still in effect") (citing *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989); 13 *Moore's Federal Practice—Civil* § 65.50); *Pargas, Inc. v. Empire Gas Corp.*, 423 F. Supp. 199, 245 (D. Md. 1976) ("[T]his Court can require an increase in the bond amount at a later date, prior to final judgment in this case, if such an increase should later prove appropriate."); *see also Gateway E. Railway Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134,

---

*accord* Order, Dkt. No. 123 ("JELD-WEN will suffer some, but not adequately-proven, economic hardship . . . .").

[2] *W.R. Grace* did not reference Rule 65(c) or involve a bond issue at all, and the Court's cursory statement regarding a bond did not address a cap on damages if a bond were imposed. 461 U.S. at 770 n.14 ("A party injured by issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."). Although *Russell* explains why a defendant is often unable to recover damages for wrongfully entered injunctions as a matter of common law equity, the Court did not state why the bonded amount would cap a defendant's damages or purport to hold that common law equity rules would govern a bond imposed under Rule 65(c), which was adopted long after *Russell* was decided. 105 U.S. at 437.

1142 (7th Cir. 1994) ("[I]t is within the district court's discretion to increase or decrease the amount [of the bond] as necessary to . . . account for changed circumstances."); *see also Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015) (adjudicating a motion to increase a Rule 65(c) bond); *Amara v. Cigna Corp.*, No. 3:01-cv-2361, at *1 (D. Conn. Oct. 15, 2014) (adjudicating a motion to increase the amount of a supersedeas bond). Thus, there is essentially no risk to JELD-WEN if the Court properly sets the bond in this case based on the current evidence in the record. If facts develop showing that compliance with the injunction is far more costly to JELD-WEN than the current record reflects, then JELD-WEN can present that evidence to the Court to seek additional security.

## III.   JELD-WEN OFFERS NO BASIS FOR THIS COURT TO CONSIDER NEW EVIDENCE OR TO OTHERWISE RECONSIDER THE PRELIMINARY INJUNCTION

JELD-WEN knew at the time of the preliminary injunction briefing and hearing that evidence of its harm was directly relevant to both the balance-of-hardship inquiry as well as the Court's obligation to set a bond under Rule 65(c) if the preliminary injunction were granted. Courts generally set the amount of the bond in the same order granting the preliminary injunction, so JELD-WEN can hardly claim that it did not have fair notice that it needed to prove its own harm during the hearing. *See, e.g.*, *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-00066, 2018 WL 3244413, at *13 (W.D. Va. July 2, 2018) (setting the bond at the same time as granting the injunction); *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 714 (E.D. Va. 2000) (Payne, J.) (same). Indeed, the record demonstrates that JELD-WEN took full advantage of its opportunity to introduce evidence of its alleged harm during the preliminary injunction proceeding. But the cupboard was bare, and JELD-WEN had only evidence that was entirely unsupported and not credible. As a result, the record on the preliminary injunction hearing lacks any credible evidence of particularized, quantifiable harm that JELD-WEN will suffer as a result of the injunction, much

6

less evidence showing financial harm of a magnitude supporting a $20.3 million bond for a brief 16-week period. Stuck with the record it built, JELD-WEN wants a second bite at the apple at proving its harm. This Court should not countenance JELD-WEN's approach.

To begin, JELD-WEN did not bother asking this Court before proffering new evidence that, among other things, (1) is directly related to the balance-of-hardship analysis, (2) could have been introduced at the preliminary injunction hearing, and (3) is inconsistent with evidence actually introduced by JELD-WEN at the hearing. By offering the evidence now, JELD-WEN essentially asks this Court to reconsider its preliminary injunction decision in connection with the Rule 65(c) bond inquiry. Yet, JELD-WEN makes no attempt to satisfy the Rule 54(b) standard that applies to requests for reconsideration. As this Court well knows, such a motion is only "appropriate where the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *United States v. Haas*, No. 3:16-CR-139, 2018 WL 4040171, at *2 (E.D. Va. Aug. 23, 2018) (Payne, J.); *accord Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545, 2018 WL 4844173, at *9 (E.D. Va. Oct. 4, 2018) (same), *appeal pending*. "Such problems rarely arise and the motion to reconsider should be equally rare"—indeed, "a court must exercise its discretion to consider such motions sparingly in order to avoid an unending motions practice." *United States v. Langley*, No. 3:11-CR-212, 2019 WL 6337416, at *1 n.1 (E.D. Va. Nov. 25, 2019) (Payne, J.), *appeal pending*. "[M]otions that simply 'ask[] a court to rethink what the Court had already thought through—rightly or wrongly' should not be granted." *Steves & Sons, Inc.*, 2018 WL 4844173, at *9 (quoting *TomTom, Inc. v. AOT Sys. GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014)); *Langley*, 2019 WL 6337416, at *1 n.1 (stating that "courts do not entertain motions to reconsider" in such circumstances).

JELD-WEN's attempt to inject new evidence about its own harm is a thinly veiled attempt to get this Court to reconsider an issue that it has already considered at length. The Court's preliminary injunction decision devoted significant time and attention to dissecting JELD-WEN's evidence about the harm it claimed it would suffer under the preliminary injunction. Mem. Op. 71–74. This is not an instance "where the Court has patently misunderstood a party" or failed to understand the party's evidence. *Haas*, 2018 WL 4040171, at *2. To the contrary, this Court fully understood JELD-WEN's "Impact Analysis" and found it not credible for numerous reasons. *See* Mem. Op. 71–74. JELD-WEN "clearly disagrees with the Court's decision, but complaining about earlier decisions with no new arguments [should do] them no good here." *Steves & Sons, Inc.*, 2018 WL 4844173, at *9.

In any event, JELD-WEN's new evidence is plagued by the same problems as the "Impact Analysis," which further weighs against reopening the record and considering the evidence. *See* Dkt. No. 156, at 5–10. Like the prior "Impact Analysis," the new declaration is replete with unsupported assumptions, critical omissions, and patently untrue statements that are contradicted by existing record evidence. *Id.* at 7–9.[3]

## <u>CONCLUSION</u>

Consistent with Rule 65(c), the Court should impose a zero-dollar bond or a nominal bond, but Steves has no objection to a more substantial bond in the amount of $1 million.

---

[3] The Court also asked a fourth question: whether the injunction could be modified to lessen JELD-WEN's harm if the new evidence is credited.  4/17/2020 Hr'ng Tr. at 10:2-12. Steves will address this question at argument if the Court decides to consider the new evidence and reconsider the injunction decision notwithstanding the problems with that approach discussed in Part III, *infra*. Steves notes, though, that it is not aware of any way to modify the injunction that does not unfairly prejudice Steves.

Dated:  April 19, 2020

Respectfully submitted,

**STEVES AND SONS, INC.**

By:  /s/ Lewis F. Powell II
Lewis F. Powell III (VSB No. 18266)
Michael Shebelskie (VSB No. 27459)
Maya M. Eckstein (VSB No. 41413)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
lpowell@hunton.com
mshebelskie@hunton.com
meckstein@hunton.com

Glenn D. Pomerantz (pro hac vice)
Kyle W. Mach (pro hac vice)
Emily Curran-Huberty (pro hac vice)
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9132
Facsimile:  (213) 683-5161

Marvin G.  Pipkin (pro hac vice)
Kortney Kloppe-Orton (pro hac vice)
PIPKIN LAW
10001 Reunion Place, Suite 6400
San Antonio, TX  78216
Telephone:     (210) 731-6495
Facsimile:     (210) 293-2139
*Attorneys for Plaintiff*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2020, I caused a copy of the foregoing to be electronically filed using the CM/ECF system, which will send notification to counsel of record of such filing by operation of the Court's electronic system.  Parties may access this filing via the Court's electronic system.

By  /s/Lewis F. Powell III
Lewis F. Powell III