UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| STEVES AND SONS, INC., </br></br> Plaintiff, </br></br> v. </br></br> JELD-WEN, INC., </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 3:20-cv-00098 </br> ) </br> ) </br> ) </br> ) </br> ) |

**JELD-WEN, INC.'S SUPPLEMENTAL STATEMENT REGARDING
ITS REQUEST FOR A $20.3 MILLION RULE 65(c) BOND**

JELD-WEN, Inc. ("JELD-WEN") respectfully submits the following statement in response to the questions posed by the Court during the April 17, 2020 telephonic hearing in this matter. At that hearing, the Court asked the parties to provide additional information on four issues:

(1) the premium on a $20.3 million Rule 65(c) bond, *see* April 17, 2020 Hearing Transcript ("Tr.") (ECF No. 167) at 6;

(2) the law on whether a bond amount caps the damages the enjoined party can recover if the injunction has been improvidently issued, Tr. 8-9;

(3) what effect considering the April 13, 2020 Declaration of D. Castillo ("Apr. 13, 2020 Castillo Decl.") (ECF No. 134) would have on the Court's previous analysis of the balance of hardships, Tr. 9-10; and

(4) whether some modification to the terms of the injunction could affect the amount at which the bond should be set, Tr. 10.

JELD-WEN respectfully submits the following responses to those questions.

**1. The premium on a $20.3 million Rule 65(c) bond.** As a threshold matter, it appears the parties agree that in setting the bond amount, this Court should not place substantial weight on the cost a Rule 65(c) bond would impose on Steves. *See* Tr. 6-7 (Mr. Pomerantz: "I've never seen

a case [in] which the amount of the bond is set based on what the premium is . . . ."). Instead, as Rule 65(c) makes clear, the bond should be set "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). That is, the bond is meant to protect the enjoined party (here, JELD-WEN), even if that necessarily imposes costs on Steves, who sought the injunction.

With that said, JELD-WEN's preliminary investigation indicates that the premium on a Rule 65(c) bond is generally 0.3% to 0.8% of the total bond amount—in other words, "a very small fraction of the sum involved." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir.), *opinion amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000) (per curiam). Applying that range here, the premium on a $20 million bond, as requested by JELD-WEN based on the harm it will suffer from complying with the Court's preliminary injunction order, may range between $60,000 and $160,000—an amount that is plainly well within Steves' financial capacity, given that Steves appears to have up to a million dollars in cash on hand for its bond. *See* Tr. 7-8.

**2. Whether a bond amount caps the damages the enjoined party can later recover.** The parties appear to agree that the Fourth Circuit has not answered the question of whether "the bond amount caps [the enjoined party's] recovery if the preliminary injunction is vacated." Steves' Resp. to JELD-WEN's Mot. for Bond Under Fed. R. Civ. P. 65(c) ("Steves Resp.") (ECF No. 156) at 3-4.[1] The weight of authority in other circuits, however, generally limits damages to the amount of the Rule 65(c) bond. *See, e.g.*, *Nat'l Collegiate Athletic Ass'n v. Gov. of New Jersey*, 939 F.3d 597, 606-09 (3d Cir. 2019) (adopting the "majority approach" that damages are available "up to the bond amount"), *pet. for cert. filed on other grounds*, No. 19-1114 (U.S. docketed Mar. 11,

---

[1] To the extent Steves' Response suggests that the Fourth Circuit has cast doubt on this rule, that is incorrect. *See* Steves Resp. at 3. The case Steves cites—*Candle Factory, Inc. v. Trade Assocs. Grp., Ltd.*, 23 F. App'x 134, 139 (4th Cir. 2001) (per curiam)—says nothing about this issue.

2

2020); *AstraZeneca LP v. Breath Ltd.*, 542 F. App'x 971, 983 (Fed. Cir. 2013); *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557-59 (2d Cir. 2011) (bond amount sets "the maximum extent" of damages); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 23 (1st Cir. 2007) (damages are available "up to the amount of the security"); *Mead Johnson*, 201 F.3d at 888; *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036-37 (9th Cir. 1994); *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989); *Holcomb v. Aetna Life Ins. Co.*, 228 F.2d 75, 82 (10th Cir. 1955) (damages are available "up to the amount of such bond"); *cf. W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 770 n.14 (1983) (party injured by an erroneous injunction "has no action for damages in the absence of a bond"). There are certain exceptions to that rule, *see, e.g.*, *Continuum Co.*, 873 F.2d at 803 (noting the "good faith" exception), and the amount of the bond may be subject to revision or appellate review, *see, e.g.*, *id.* at 804; *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 (M.D.N.C. 2015). But as a general matter, most courts have concluded that the amount of the bond limits the damages recoverable. For that reason, courts "should err on the high side" in setting the bond amount, *Mead Johnson*, 201 F.3d at 888, since a party that is erroneously enjoined will recover no more than its actual losses if the bond amount is too high—but may be deprived of full compensation for its losses if the bond amount is too low, since its recovery generally "cannot exceed the amount of the bond," *id.*

**3. Effect of consideration of Mr. Castillo's April 13 Declaration.** JELD-WEN understands that the Court reached its decision to issue the preliminary injunction, and assessed the balance of hardships, based on the evidence presented at the preliminary injunction hearing held on March 5 and 6. JELD-WEN is not aware of any reason why considering the April 13, 2020 Castillo Declaration, which was submitted in response to the Court's order that the parties

address the amount of the Rule 65(c) security bond, would require this Court to reopen the preliminary injunction record and reconsider whether the injunction is appropriate in the first place in light of that additional evidence. Of course, if the Court finds that the evidence presented in Mr. Castillo's declaration casts serious doubt on its previous evaluation of the balance of hardships, it is free to exercise its discretion to reconsider its preliminary injunction decision in light of that additional evidence. *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts."). At this point, however, the issue before the Court is the appropriate amount of a bond based on the facts as JELD-WEN now knows them in light of intervening events since the preliminary injunction hearing. This Court should assess the bond amount based on the currently available evidence, and that necessarily includes the actual orders and forecasts JELD-WEN has received from its doorskin customers, and how the specific injunction issued by the Court will impact JELD-WEN. By definition, JELD-WEN could not have presented that evidence at the time of the injunction hearing, since it did not know what order the Court would enter, the status of its customers' orders at the time of the injunction, or how the Court's order would impact JELD-WEN's ability to fill doorskin orders and impact its own door business.

**4. Whether modifying the injunction could affect the bond amount.** The answer to this inquiry depends upon the contours of any modification the Court might make. As JELD-WEN made clear in its response filed last week (April 15), the analysis reflected in the April 13, 2020 Castillo Declaration and accompanying exhibits was premised on the specific injunction entered by the Court and the updated facts as JELD-WEN now knows them. Thus, any change in the Court's injunction order could affect the bond amount.

While the Court did not ask the parties to address any particular potential modification, as the April 13, 2020 Castillo Declaration reflects, much of the harm JELD-WEN would suffer from complying with the preliminary injunction derives from the shortages to JELD-WEN itself that would ensue for particular doorskin styles if JELD-WEN is required to end allocation and provide Steves with an additional 262,400 back-ordered doorskins per week (in the order they were received) until all of Steves' previous orders have been filled. To that end, JELD-WEN believes the amount of the required bond could be substantially reduced if the Court were to modify its preliminary injunction to: (1) afford JELD-WEN a longer period of time than contemplated by the current injunction to fulfill Steves' Prior Unfilled Orders (those at issue in Section D of the Court's April 10, 2020 Order, ECF No. 123 at 3-4) with regard to certain doorskin styles and allow JELD-WEN flexibility to fulfill those orders according to its inventory and ongoing production, regardless of the sequence of the original orders, and (2) with regard to orders submitted after entry of the injunction[2], afford JELD-WEN a longer period of time (in excess of 30 days) to fulfill Steves' orders with regard to certain doorskin styles.[3]

For the foregoing reasons, along with those JELD-WEN has already explained in its

---

[2] JELD-WEN is able to ship all ordered quantities confirmed by JELD-WEN before entry of the preliminary injunction within 30 days without harm to JELD-WEN or its customers.

[3] In addition to the capacity limitations set forth in Mr. Castillo's April 13 declaration, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. To mitigate the effects of these shutdowns, as well as the demand for certain doorskin styles that JELD-WEN forecasts over the coming months, if Steves agrees to provide JELD-WEN monthly doorskin forecasts by SKU, JELD-WEN anticipates it can facilitate its doorskin production and potentially shorten the period of any necessary extension. In the absence of such forecasts, JELD-WEN may experience the same shortages currently at issue if Steves orders significantly more of certain SKUs than it has historically. Finally, it is possible that, if overall demand lessens in the coming weeks, that could further shorten the period needed for any extensions.

previous briefing, unless the Court modifies the preliminary injunction ordered on April 10, 2020, this Court should set the bond amount at $20.3 million.

Dated: April 19, 2020

Respectfully submitted,

JELD-WEN, Inc.

By counsel

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
Gregory J. DuBoff
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com

Brian D. Sieve (*pro hac vice* pending)
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000 – Tel.
(312) 862-2200 – Fax
brian.sieve@kirkland.com

Michael A. Glick (*pro hac vice* pending)
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000 – Tel.
(202) 389-5200 – Fax
michael.glick@kirkland.com

Alexia R. Brancato (*pro hac vice* pending)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
(212) 909-4800 – Tel.
(212) 446-4900 – Fax
alexia.brancato@kirkland.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of April 2020, the following counsel of record have been served using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

Lewis F. Powell III
John S. Martin
Alexandra L. Klein
Maya M. Eckstein
Douglas M. Garron
R. Dennis Fairbanks, Jr.
Michael Shebelskie
William H. Wright, Jr.
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200 – Tel.
(804) 788-8218 – Fax
lpowell@huntonAK.com
martinj@huntonAK.com
aklein@huntonAK.com
meckstein@huntonAK.com
dgarrou@huntonAK.com
dfairbanks@huntonAK.com
mshebelskie@huntonAK.com
cwright@huntonAK.com

Ted Dane
Glenn Pomerantz
Gregory Sergi
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9288 – Tel.
(213) 683-4088 – Fax
ted.dane@mto.com
glenn.pomerantz@mto.com
gregory.sergi@mto.com

Kyle Mach
Emily C. Curran-Huberty
Munger, Tolles & Olson LLP

560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000 – Tel.
(415) 512-4077 – Fax
kyle.mach@mto.com
emily.curran-huberty@mto.com

*Attorneys for Plaintiff*

Marvin G. Pipkin
Kortney Kloppe-Orton
Pipkin Law
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
(210) 731-6495 – Tel.
(210) 293-2139 – Fax

*Of Counsel*

/s/ *Brian C. Riopelle*
Brian C. Riopelle (VSB #36454)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1084 – Tel.
(804) 698-2150 – Fax
briopelle@mcguirewoods.com

*Attorney for Defendant*